IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

QUINCY BIOSCIENCE, LLC,

                              Plaintiff,

  v.                                            OPINION and ORDER

BRYK ENTERPRISES, LLC,                  22-cv-658-jdp

                              Defendant.

---

      Plaintiff Quincy Bioscience, LLC is suing defendant BRYK Enterprises, LLC under multiple legal theories for making unauthorized sales of products branded with Quincy's PREVAGEN trademark. BRYK didn't answer the complaint, so Quincy moved for default judgment.

      Before scheduling a hearing on Quincy's motion, the court directed Quincy to provide more information about its basis for exercising personal jurisdiction over BRYK in Wisconsin. The court concludes that Quincy has adequately addressed the jurisdictional issue. But Quincy's response exposes a problem with the merits of its claims for trademark infringement and unfair competition: the products alleged to have been sold by BRYK were genuine PREVAGEN products. The sales were unauthorized, in the sense that Quincy didn't want or authorize BRYK to make them, but whether those sales were unlawful is another matter. For the reasons explained below, the court will allow Quincy to proceed on a claim for false advertising under 15 U.S.C. § 1125(a)(1)(B), but all other claims will be dismissed. The court will schedule a default judgment hearing on the false advertising claim.

BACKGROUND

Quincy makes supplements for "the support of cognitive function," and it sells those supplements under the PREVAGEN mark, which it owns and has used since 2007. Dkt. 1, ¶¶ 9, 11. Quincy alleges that BRYK sells products under the PREVAGEN mark on Amazon.com, even though BRYK is not an authorized seller. Dkt. 1, ¶¶ 28–31 and Dkt. 16, ¶ 12.

Quincy originally asserted four claims under the Lanham Act: (1) counterfeiting, 15 U.S.C. § 1114(1)(a); (2) trademark mark infringement, § 1114 and § 1125(a)(1)(A); (3) false designation of origin and unfair competition, 15 U.S.C. § 1125(a); and (4) false advertising, 15 U.S.C. § 1125(a)(1)(B). Quincy also asserted state-law claims for trademark infringement and counterfeiting, Wis. Stat. §§ 132.02 and 132.033. Quincy sought statutory damages, injunctive relief, and attorney fees.

All five claims were based on one of two theories of harm. First, Quincy said that some of the products sold by BRYK under Quincy's mark were not true PREVAGEN supplements and didn't contain the supplement's active ingredients, so the fake supplements would divert sales away from Quincy and harm the brand's reputation. Dkt. 1, ¶¶ 30, 50. Second, Quincy said that other products sold by BRYK under Quincy's mark were sold "in defective condition, including with outer box packaging completely missing, damaged or compromised." Dkt. 1, ¶ 34. In a supplemental declaration, Quincy's vice president of sales clarified that that Quincy had identified "at least sixteen" PREVAGEN products that BRYK had sold "in defective condition." Dkt. 27. "These included six products which arrived with no outer packaging whatsoever, an additional four products whose packaging was significantly damaged, and an

2

additional six that did not include an accessory pill-minder shown and described in the Amazon listings from which the test orders were placed." *Id.*

After Quincy moved for default judgment, the court issued two orders asking for more information about Quincy's basis for exercising personal jurisdiction over BRYK. A court may exercise personal jurisdiction if the plaintiff shows two things: (1) the defendant purposefully availed itself of the privilege of conducting business in the forum state or purposefully directed its activities at the state; and (2) the plaintiff's alleged injury arose out of the defendant's forum-related activities. *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 398 (7th Cir. 2020).[1] Defects in personal jurisdiction are not waived by a failure to answer the complaint. *See Swaim v. Moltan Co.*, 73 F.3d 711, 717 (7th Cir. 1996).

In the first order, the court observed that Quincy's complaint alleged generally that BRYK made "internet sales . . . directed to Wisconsin." Dkt. 1, ¶ 6. But the complaint didn't identify any specific Wisconsin sales or other activities by BRYK that would establish the necessary minimum contacts with Wisconsin to authorize an exercise of personal jurisdiction over BRYK.[2] So the court gave BRYK an opportunity to supplement its personal jurisdiction allegations.

---

[1] A court may also exercise personal jurisdiction over a defendant if the defendant's contacts with the forum state are so "systematic and continuous" that the defendant could be considered at home there. *Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014). But Quincy doesn't contend that it can meet this standard, so the court need not consider it.

[2] Quincy also said that personal jurisdiction was proper because BRYK knew that "Quincy was located in Wisconsin and is harmed in Wisconsin." Dkt. 26, at 7. But the court of appeals has held in other trademark infringement cases that "[k]nowing about a potential for harm in a particular state" isn't enough to establish personal jurisdiction. *Ariel Investments, LLC v. Ariel Capital Advisors LLC*, 881 F.3d 520, 522 (7th Cir. 2018); *see also Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014) (it was "error" for the district court to conclude that "personal jurisdiction [was] proper because [the defendant]

In response, Quincy submitted a declaration in which it said that it submitted 29 test orders to BRYK between May and August 2022. Dkt. 16, ¶¶ 4, 8. For reasons it didn't explain, Quincy asked BRYK to ship orders to states *other* than Wisconsin, *id.*, even though Quincy is located in this state. But Quincy said that the *billing address* on the invoices was Wisconsin, and it attached a sample invoice. Dkt. 16-2.

Recent Seventh Circuit law says that a plaintiff can essentially manufacture personal jurisdiction by buying products from the defendant and having the products shipped to the plaintiff's home state. *See NBA Properties, Inc. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022). The court reasoned as follows: "[W]hat matters is [the defendant's] structuring of its own activities so as to target the [the forum state's] market. [The plaintiff's] motivations in purchasing the allegedly illegal item are in no way relevant to an assessment of whether [the defendant] has established sufficient contacts to sell its products to [forum state] residents." *Id.* at 624.

But *NBA Properties* is distinguishable because the plaintiff in that case had the products shipped to the forum state. Quincy had the products shipped to other states. The court of appeals did not directly answer the question whether it is enough if the plaintiff lists a forum-state billing address on the order. Quincy cites district court decisions that relied on a customer's billing address in the forum state as a sufficient forum contact. *See Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824, 838 (N.D. Ill. 2000); *ICG America, Inc. v. Wine of the Month Club, Inc.*, No. 3:09–cv–133, 2009 WL 2843261, at *4 (D. Conn. Aug. 28, 2009).

---

knew that [the plaintiff] was [a forum-state] company and could foresee that its misleading emails and sales would harm [the plaintiff] in [the forum state]"). Quincy doesn't attempt to distinguish these cases, so Quincy has forfeited any argument based on the so-called "effects test."

4

The question is a close one, but the court is persuaded that fulfilling an order from a customer that identifies itself as based in the forum state is enough to show purposeful forum-directed contact. If the defendant makes sales to a customer that it knows is a resident of the forum state, it follows that the defendant can reasonably expect to be sued in that state on a claim that arises of out the sale of the product.

This conclusion doesn't resolve the personal jurisdiction issue because Quincy admitted in a supplemental declaration that the test orders it received from BRYK did *not* include counterfeit supplements. Rather, Quincy said that it is aware of a single counterfeit order sold by BRYK, and that order was sent to a different customer, who then sent it to plaintiff. Dkt. 16, ¶ 5. Plaintiff didn't allege that the customer had any contacts with Wisconsin, which was a problem because the plaintiff must show that there is a connection between its injury and the defendant's contacts with the state. *See uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 429–30 (7th Cir. 2010). If the alleged counterfeit product was neither purchased by a Wisconsin resident nor shipped to that state, then the product cannot serve as the basis for an exercise of personal jurisdiction. As a result, this court issued a second order, this time directing Quincy to show cause why the case should not be dismissed for lack of personal jurisdiction. Dkt. 22.

In its response to that order, Quincy now agrees to dismiss its claims based on a counterfeiting theory without prejudice and to withdraw its request for damages. Dkt. 24. But it says that it should be permitted to proceed on its other claims, which are based on the theory that BRYK shipped PREVAGEN products in defective condition to a customer with a Wisconsin billing address. *Id.* The court will grant Quincy's request to dismiss the counterfeiting claims without prejudice. The remaining questions raised by Quincy's response are addressed in the analysis.

ANALYSIS

The court will address two issues in this order: (1) whether the court may exercise personal jurisdiction over BRYK on the claims arising out of PREVAGEN products that BRYK shipped in defective condition to a customer with a Wisconsin billing address; and (2) whether Quincy is entitled to relief on those claims.

### A. Personal jurisdiction

As already noted, this court may exercise personal jurisdiction over BRYK on a particular claim if Quincy shows that: (1) BRYK purposefully availed itself of the privilege of doing business in Wisconsin; and (2) Quincy's claimed injury arises out of BRYK's contacts with Wisconsin. *Curry*, 949 F.3d at 398. Quincy has satisfied this standard for its claims based on PREVAGEN products that BRYK sold in defective condition. As for the first element, the court has concluded that fulfilling orders of a forum-state resident with a forum-state billing address is minimally sufficient under the facts of this case to show purposeful availment. As for the second element, Quincy alleges that some of the products it ordered using its Wisconsin billing address arrived in defective condition, so there is a sufficient connection between BRYK's Wisconsin contacts and Quincy's injury.

### B. Merits

When a defendant has defaulted, the court must accept all the allegations in the plaintiff's complaint as true, except the allegations related to damages. *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Medical Supplies, Inc.*, 961 F.3d 942, 948 (7th Cir. 2020). But this does not mean that a default establishes liability for any legal theory asserted in the complaint. *See* 10A Fed. Prac. & Proc. Civ. § 2688.1 (4th ed.). "Even after default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action." *Id.* In other

words, the plaintiff must persuade the court that its allegations state a claim upon which relief may be granted on each asserted legal theory. *See United States v. Summit, Inc.*, No. 19-cv-250, 2022 WL 2195443, at *8–9 (N.D. Ind. 2022) (collecting cases from several circuits, including the Seventh Circuit); *see also Quincy Bioscience, LLC v. Ellishbooks*, 957 F.3d 725, 731 (7th Cir. 2020) (considering whether allegations established particular elements of the claim on appeal of default judgment); *Abdul-Wadood v. Wright*, No. 95–1349, 1996 WL 218900, at *1 (7th Cir. 1996) (nonprecedential) ("The district court properly set aside the default entry because the complaint failed to state a claim upon which relief could be granted and was thus legally insufficient to support a default judgment.").

With the counterfeiting claim out of the case, Quincy now relies on two legal theories: trademark infringement and false advertising.[3] The court concludes that Quincy has stated a claim for false advertising, but not trademark infringement.

A claim for false advertising under § 1125(a)(1)(B) has five elements: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products. *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999).

---

[3] Quincy asserted claims for trademark infringement under both federal and state law, but the essential elements are the same under both state and federal law. *A&L Industries, LLC v. Weaver Enterprises, Ltd.*, No. 20-cv-552-slc, 2021 WL 3856745, at *8 (W.D. Wis. Aug. 30, 2021).

7

Quincy has alleged each of these elements. As for the first element, Quincy alleges that BRYK states on its Amazon storefront that the PREVAGEN products it sells are in "new" condition, but Amazon defines "new" to mean that the product is sold in "the original manufacturer packaging." Dkt. 1, ¶¶ 72–74. Quincy also alleges that some of the orders it received from BRYK "arrived with no outer packaging whatsoever." Dkt. 27.[4] From these allegations, it is reasonable to infer that BRYK made "a false statement of fact" (all of its PREVAGEN products are in new condition) in a commercial advertisement (on BRYK's Amazon storefront) about its own or another's product (Quincy's PREVAGEN supplements).

It is also reasonable to infer that the facts alleged would meet the remaining elements. Specifically, a representation that the products were in new condition would have a tendency to lead consumers to believe that they were receiving all of the packaging, the failure to provide all packaging could influence a consumer's decision whether to buy the product, BRYK inserted the false statements into interstate commerce by placing them on Amazon.com, and Quincy is likely to be injured as a result of diverted sales or loss of good will.

Quincy's trademark infringement claim is another matter. The keystone of trademark infringement is the use of a protectable trademark in a manner that would cause consumer confusion as to the product's source, sponsorship, or affiliation. *Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015). Quincy has alleged a protectable interest in the PREVAGEN

---

[4] Quincy also says that the packaging was damaged in some instances and that pill boxes that were supposed to accompany the supplements were missing in other instances. Dkt. 27. But Quincy doesn't point to any language in Amazon's definition of "new" that requires the packaging to be undamaged or to include the pill boxes, so Quincy forfeited any claims based on these issues.

mark, Dkt. 1, ¶ 11, it attached a copy of the registration to the complaint, Dkt. 1-1, and it alleges that it has consistently used the mark since 2007, Dkt. 1, ¶ 9.

But Quincy hasn't alleged a likelihood of confusion. As explained above, no counterfeit products are part of this case. Quincy alleges that BRYK's sales are unauthorized, but the unauthorized sale of a genuine product does not violate trademark law. *See Slep–Tone Entertainment Corp. v. Sellis Enterprises, Inc.*, 87 F. Supp. 3d 897, 905 n.5 (N.D. Ill. 2015); *see also R.J. Reynolds Tobacco Co. v. Cigarettes Cheaper!*, 462 F.3d 690, 700 (7th Cir. 2006); *Ty Inc. v. Perryman*, 306 F.3d 509, 513 (7th Cir. 2002). The reasoning for this principle is straightforward: "[W]hen a retailer—such as Amazon—merely resells a genuine, unaltered good under the trademark of the producer, the use of the producer's trademark by the reseller will not deceive or confuse the public as to the nature, qualities, and origin of the good. Rather, the consumer gets exactly what the consumer bargains for, the genuine product of the particular producer." *Maui Jim, Inc. v. SmartBuy Guru Enterprises*, 459 F. Supp. 3d 1058, 1080 (N.D. Ill. 2020) (internal quotation marks omitted). So Quincy must allege more than that BRYK's sales of PREVAGEN are unauthorized.

Quincy's theory seems to be that BRYK is not selling genuine PREVAGEN supplements because the packaging in some of the products sold by BRYK is damaged or missing, and that is the source of confusion. Some courts, including this one, have held that a product that doesn't meet the trademark holder's quality control standards is not really a "genuine" product, so it may confuse consumers and erode customer goodwill. *See Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 304 (3d Cir. 1998); *Warner-Lambert Co. v. Northside Dev. Corp*, 86 F.3d 3, 5-8 (2d Cir. 1996); *Shell Oil Co. v. Comm. Petro. Inc.*, 928 F.2d 104, 107 (4th Cir. 1991); *Standard Process Inc. v. AVC Infinite, LLC*, No. 18-cv-849-wmc, 2020 WL 103841, at *5 (W.D. Wis. Jan.

9

9, 2020). But to prevail under this theory, the plaintiff must show that it *has* quality control standards so that there is a material difference between the products it sells and the products the defendant sells. Specifically, the plaintiff must show three things: (1) it has established legitimate, substantial, and non-pretextual quality control procedures; (2) it abides by these procedures; and (3) the non-conforming sales will diminish the value of the mark. *Warner-Lambert*, 86 F.3d at 5–8.

*Warner-Lambert* provides a good example of a viable trademark infringement claim based on the sale of genuine goods. In that case, the defendant sold out-of-date Halls cough drops. The trademark owner showed that it took steps to prevent the sale of stale product, efforts that the defendant's sales frustrated. The court held that there was a likelihood of confusion because consumers might be misled into thinking that the defendant's stale cough drops were authorized by the trademark owner. *Id*.

So, if a trademark owner hopes to prevail on a trademark infringement claim against sales of a genuine product on the theory that the product somehow deviates from its quality standards, the trademark owner must allege facts that would support that theory. Neither Quincy's complaint nor the materials filed with its motion for default judgment show or allege anything about Quincy's quality-control practices and procedures. The court concludes that Quincy hasn't stated a claim for trademark infringement, and the court will dismiss Quincy's trademark infringement claims.

C.  **Next steps**

The court will direct the clerk of court to schedule a hearing on Quincy's motion for default judgment. But the hearing will be limited to establishing a remedy arising from Quincy's claim for false advertising. Quincy's proposed injunction and motion for attorney fees are both

10

based on an assumption that it will prevail on all of its claims, so the court will deny Quincy's motion for fees without prejudice and allow Quincy to submit a new fee petition and a new proposed injunction. Quincy is only seeking injunctive relief, so if it fails to submit a new version of its proposed injunction, the court will dismiss the case for failure to prosecute.

## ORDER

IT IS ORDERED that:

1. Plaintiff Quincy Bioscience, LLC's motion for leave to file an amended motion for default judgment, Dkt. 24, is GRANTED, and Quincy's original motion for default judgment, Dkt. 9, is DENIED as moot.

2. Quincy's counterfeiting claims are DISMISSED without prejudice for lack of personal jurisdiction.

3. Quincy's trademark infringement and unfair competition claims are DISMISSED for failure to state a claim upon which relief may be granted.

4. Quincy's motion for attorney fees, Dkt. 18, is DENIED without prejudice.

5. The clerk of court is directed to schedule a new default hearing on Quincy's false advertising claim.

6. Quincy may have until April 26, 2023, to file a renewed motion for attorney fees and a new proposed injunction limited to Quincy's false advertising claim. If Quincy does not submit a new proposed injunction, the court will dismiss the case for failure to prosecute.

Entered April 13, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge